UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DENISE R. BUETHE,<br><br>    Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>    Defendant. | No. 2:20-cv-552-KJN<br><br><u>ORDER ON PARTIES' CROSS-MOTIONS FOR SUMMARY JUDGMENT</u><br><br>(ECF Nos. 15, 19.) |

Plaintiff seeks judicial review of a final decision by the Commissioner of Social Security denying her application for Disability Insurance Benefits under Title II the Social Security Act.[1] In her motion for summary judgment, plaintiff contends the Administrative Law Judge ("ALJ") erred by discounting the opinion of her physician and misreading the opinions of the state-agency physicians; and erred in failing to articulate clear and convincing reasons for rejecting the subjective-symptom testimony. The Commissioner contends in its cross-motion that the ALJ's decision is supported by substantial evidence and free from legal error.

For the reasons set forth below, the court DENIES the Commissioner's cross-motion for summary judgment, GRANTS plaintiff's motion, and REMANDS for further consideration.

---

[1] This action was referred to the undersigned pursuant to 28 U.S.C. § 636 and Local Rule 302(c)(15). Both parties consented to proceed before a United States Magistrate Judge, and the case was reassigned to the undersigned for all purposes. (ECF Nos. 6, 9, 18.)

1

# I. RELEVANT LAW

The Social Security Act provides benefits for qualifying individuals with disabilities. Disability is defined, in part, as an inability to "engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. §§ 423(d)(1)(a) (Title II). An ALJ is to follow a five-step sequence when evaluating an applicant's eligibility for benefits.[2] 20 C.F.R. § 404.1520(a)(4).

A district court may reverse the agency's decision only if the ALJ's decision "contains legal error or is not supported by substantial evidence." Ford v. Saul, 950 F.3d 1141, 1154 (9th Cir. 2020). Substantial evidence is more than a mere scintilla, but less than a preponderance, i.e., "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. The court reviews the record as a whole, including evidence that both supports and detracts from the ALJ's conclusion. Luther v. Berryhill, 891 F.3d 872, 875 (9th Cir. 2018). However, the court may review only the reasons provided by the ALJ in the decision, and may not affirm on a ground upon which the ALJ did not rely. Id. "[T]he ALJ must provide sufficient reasoning that allows [the court] to perform [a] review." Lambert v. Saul, 980 F.3d 1266, 1277 (9th Cir. 2020).

The ALJ "is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Ford, 950 F.3d at 1154. Where evidence is susceptible to more than one rational interpretation, the ALJ's conclusion "must be upheld." Id. Further, the court may not reverse the ALJ's decision on account of harmless error. Id.

---

[2] The sequential evaluation is summarized as follows:
**Step one**: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
**Step two**: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
**Step three**: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
**Step four**: Is the claimant capable of performing past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
**Step five**: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.
Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995). The burden of proof rests with the claimant through step four, and with the Commissioner at step five. Ford, 950 F.3d at 1148.

## II. BACKGROUND AND ALJ'S FIVE–STEP ANALYSIS

In October of 2017, plaintiff applied for Disability Insurance Benefits, alleging disability due to "neuropathy; Rheumatoid arthritis; no cartilage in knees; can't stand or sit too long; hip problems; back problems due to curved spine; diabetes; constant body pain; PTSD; [and] depression." (Administrative Transcript ("AT") 73 and 159-65, electronically filed at ECF No. 12.) Plaintiff's application was twice denied, and she sought review with an ALJ after being appointed counsel. (See AT 71, 84, 100.) The ALJ held a hearing on November 15, 2018, where plaintiff testified about her symptoms and a Vocational Expert ("VE") testified regarding jobs for someone with plaintiff's limitations. (See AT 32-57.)

On February 26, 2019, the ALJ issued a decision determining plaintiff was not disabled from her onset date forward. (AT 15-27.) At step one, the ALJ found plaintiff had not engaged in substantial gainful activity since her alleged onset date of April 30, 2015. (AT 17.) At step two, the ALJ noted plaintiff had the following severe impairments: major depressive disorder with panic attacks, right knee meniscal tear, and left knee meniscal tear. (Id.) The ALJ found plaintiff's diabetes to be non-severe as "very well controlled," her obesity did not require additional limitations beyond those ascribed in the RFC, and no medical evidence supported plaintiff's allegation that she had rheumatoid arthritis. (AT 17-18.) At step three, the ALJ determined plaintiff was not disabled under the listings. (AT 18, citing 20 C.F.R. Part 404, Subpart P, Appendix 1).

The ALJ then determined plaintiff had the Residual Functional Capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b), except that:

> [S]he can lift 20 pounds occasionally and 10 pounds frequently; stand, walk, and/or sit for 6 hours out [of] 8; occasionally climb ramps and stairs; occasionally crouch, kneel, crawl, or stoop; never climb ladders, ropes, or scaffolds; can perform noncomplex and routine tasks; can have occasional public contact; must have a sit/stand option to change position every 30 minutes while remaining on task.

(AT 20.) In fashioning this RFC, the ALJ stated she considered plaintiff's symptoms, the medical evidence, and professional medical opinions in the record. (Id.) Relevant here, the ALJ was not persuaded by the more-limiting opinion of plaintiff's primary-care physician, Dr. Freund, stating

the form lacked detail in certain diagnoses and timeframes and otherwise lacking consistency with the record. (AT 25.) The ALJ was also "somewhat persuaded" by the opinions of Drs. Huynh and Ruo (expressed in the prior administrative medical findings), accepting more limitations in some areas and less in others. (AT 24-25.) Finally, the ALJ rejected the more limiting portions of plaintiff's subjective symptom testimony as inconsistent with the medical evidence, conservative course of treatment, plaintiff's daily activities, and the "longitudinal record." (AT 24.) Based on this RFC and the VE's testimony, the ALJ concluded that while plaintiff was incapable of performing past relevant work as a "department manager," there were "jobs that exist in significant numbers in the national economy that [she] can perform." (AT 25-27.) These jobs included Bench Assembler, Final Inspector, and Inspector and Hand Packager, all light, unskilled positions with close to 300,000 positions in the national economy. (AT 27.) Thus, the ALJ determined plaintiff was not disabled for the relevant period. (Id.)

The Appeals Council denied plaintiff's appeal. (AT 1-6.) Thereafter, plaintiff filed this action requesting review of the ALJ's decision, and the parties each moved for summary judgment. (ECF Nos. 1, 15, 20.)

### III. DISCUSSION

Plaintiff contends the ALJ erred in failing to properly articulate and accurately assess the persuasiveness of the opinions of her "treating" physician Dr. Freund as well as those expressed in the prior administrative medical findings. She also contends the ALJ failed to articulate clear and convincing reasons for rejecting plaintiff's subjective-symptom testimony. Thus, plaintiff requests this court remand for further proceedings. (ECF No. 15, 21.)

The Commissioner requests affirmance, arguing the ALJ expressed six separate reasons why Dr. Freund's opinion was "not persuasive," each of which the Commissioner argues is legally sound and supported by the record. The Commissioner also argues the ALJ reasonably considered the persuasiveness of Drs. Hyunh's and Ruo's findings. The Commissioner contends substantial evidence supports the ALJ's evaluation of plaintiff's symptoms. (ECF No. 19.)

Because further proceedings are required regarding the opinions of Drs. Freund, Hyunh, and Ruo, the court does not reach the subjective-symptom-testimony issue.

**Legal Standards**

On January 18, 2017, the Social Security Administration published comprehensive revisions to its regulations regarding the evaluation of medical evidence. See Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01 (January 18, 2017) (available at 2017 WL 168819). For applications filed on or after March 27, 2017,[3] the new regulations state an ALJ need "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s) ("PAMF") [i.e., state-agency medical consultants], including those from [plaintiff's] medical sources." See 20 C.F.R. § 404.1520c(a). Instead, an ALJ is to evaluate opinions and PAMFs by considering their "persuasiveness." § 404.1520c(a). In determining how "persuasive" the opinion of a medical source or PAMF is, an ALJ must consider the following factors: supportability, consistency, treatment relationship, specialization, and "other factors." § 404.1520c(b), (c)(1)-(5). Despite a requirement to "consider" all factors, the ALJ's duty to articulate a rationale for each factor varies. § 404.1520c(a)-(b).

///

---

[3] For applications filed prior to March 27, 2017, an ALJ was to give more weight to "those physicians with the most significant clinical relationship with the plaintiff . . . ." Carmickle v. Comm'r, 533 F.3d 1155, 1164 (9th Cir. 2008). This "treating physician rule" allowed an ALJ to reject a treating or examining physician's uncontradicted medical opinion only for "clear and convincing reasons," and allowed a contradicted opinion to be rejected for "specific and legitimate reasons that are supported by substantial evidence in the record." Id. However, the agency has moved away from this hierarchy. See 82 Fed. Reg. 5844. In doing so, it is not yet clear how much the new regulations affect other Ninth Circuit principles governing Social Security review, as appeals of decisions governed by the new regulations are only just beginning to reach the district courts. In the absence of binding interpretation by the Ninth Circuit, the court joins other district courts in concluding that longstanding general principles of judicial review— especially those rooted in the text of the Social Security Act—still apply to cases filed on or after March 27, 2017. Cf, e.g., Jones v. Saul, 2021 WL 620475, *10 (E.D. Cal. Feb. 17, 2021) (finding the ALJ legitimately found a physician's opinion unpersuasive by accurately noting the inconsistency between the opinion and the treatment notes, relying in part on Valentine v. Comm'r, 574 F.3d 685 (9th Cir. 2009) (a contradiction between an opinion and treatment notes constitutes a "specific and legitimate" reason for rejecting the physician's opinion)); with Mark M. M. v. Saul, 2020 WL 2079288, (D. Mont. Apr. 29, 2020) (finding the ALJ failed to "link purportedly inconsistent evidence with the discounted medical opinion," relying on Magallanes v. Bowen, 881 F.2d 747 (9th Cir. 1989) (ALJ must provide a detailed and thorough summary of conflicting evidence, and an interpretation and findings thereon)).

In all cases, the ALJ must at least "explain how [she] considered" the supportability and consistency factors, as they are "the most important factors." § 404.1520c(b)(2). For supportability, the regulations state: "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive [the opinion or PAMF] will be." § 404.1520c(c)(1). For consistency, the regulations state: "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive [the opinion or PAMF] will be." § 404.1520c(c)(2). The ALJ is required to articulate findings on the remaining factors (relationship with claimant, specialization, and "other") only when "two or more medical opinions or prior administrative medical findings about the same issue" are "not exactly the same," and both are "equally well-supported [and] consistent with the record." § 404.1520c(b)(2)&(3). Finally, the regulations allow an ALJ to address multiple opinions from a single medical source in one analysis. § 416.920c(b)(1) ("source-level articulation").

**Analysis**

Before reaching the ALJ's analysis here, the court resolves plaintiff's argument that the "treating physician rule," which required an ALJ to give deference to a treating physician like Dr. Freund, is still binding on the court. The Commissioner argues this rule was replaced with a paradigm that places all medical opinions "on equal footing." See 82 Fed. Reg. at 5852-53. Plaintiff argues that because the rule was based on case law existing long before the last set of revisions in the early 1990s, the new regulations have not abrogated this precedent. (See ECF No. 15.)

The court is aware that this issue is currently in dispute across the country, but that as of this order no circuit court has expressed an opinion either way. For sake of consistency, the court adopts the findings previously expressed by Magistrate Judge Claire on this issue. Jones v. Saul, 2021 WL 620475, at *6-9 (E.D. Cal. Feb. 17, 2021) (finding the Commissioner was entitled to Chevron deference in disposing of the treating physician rule).

///

6

Plaintiff alleges error in the ALJ's analysis of physician Dr. Freund's opinion, arguing the ALJ essentially ignored large portions of the record regarding plaintiff's hip and knee, gait, pain, and weakness, and asserting highly-technical reasons for finding the opinion unpersuasive. Further, plaintiff argues the ALJ's description of the findings from Drs. Hyunh and Ruo (in the prior administrative medical findings) is substantially inaccurate. The court concurs, and finds the ALJ impermissibly cherry-picked the record when analyzing the supportability and consistency of these opinions. This results in a decision that is not based on substantial evidence.

Plaintiff submitted a May 2018 check-box form from Dr. Freund's office[4] assessing the following work-related limitations: no lifting more than 5 pounds, standing and walking up to 45 minutes per day in 5 minute increments, sitting for 1½-2 hours in 10-15 minute increments, and no climbing, balancing, stooping, crouching, kneeling, crawling, pushing/pulling, or performing certain head movements. (AT 770-771.) The form also indicates plaintiff would be off task over 50% of the time and would likely have good days and bad days more than 4 days per month. (Id.) The ALJ found Dr. Freund's opinion "not persuasive," explaining:

> [a] It does not appear that a physician filled out this form and appears to have two different handwritings. Further, the signature is illegible. Assuming for the sake of argument that this is the opinion of the claimant's treating physician, [b] it includes no diagnosis of meniscal tears. Instead, it references knee "pain." As noted above, pain is not a medically determinable impairment. [c] Further, the opinion indicates that the claimant had an abnormal gait, however, as detailed above, for much of the relevant period this was not the case. [d] Still further, the opinion references "muscle weakness" without identifying which muscle groups are affected. As detailed above, treatment notes reflect full strength in the quadriceps and hamstrings repeatedly. Still further, the opinion is not specific as to when these purported limitations would have existed. [e] Even further, he proposed that the claimant could lift and carry no more than 5 pounds and sit no more than 15 minutes at a time, which is less than what she reported at the hearing. [f] Finally, as detailed above, Dr. Freund's treatment notes do not reflect this level of impairment.

(AT 25.)

---

[4] The parties dispute whether this form was the actual opinion of Dr. Freund, as the ALJ expressed some doubt as to its origin. (See AT 25.) On this issue, the court finds no error in the ALJ's actions. The ALJ is responsible for resolving ambiguities in the record, Ford, 950 F.3d at 1154, and it appears the ALJ was doing so here by noting some discrepancies in the form. Regardless, the ALJ did not end her discussion of this form, but accepted it contained Dr. Freund's opinions, and continued to analyze its supportability and consistency.

Further, the ALJ found the prior administrative medical findings of Drs. Hyunh and Ruo "somewhat persuasive," summarizing them as follows:

> Dr. Huynh determined that the claimant could lift, carry, push, and pull 20 pounds occasionally and 10 pounds frequently, stand/walk for 6 hours out of an 8 hour workday, sit for six hours in an eight-hour workday, occasionally climb ramps and stairs, never climb ladders, ropes, or scaffolds, and occasionally balance, stoop, kneel, crouch, and crawl. ([S]ee also opinion of Dr. Y. Ruo reaching similar conclusions which I find similarly persuasive.) This opinion is based in part on a finding that the claimant requires a handheld assistive device for ambulation. That finding is not supported by the record. The record does include recommendation for two hinged braces, but does not indicate the need for a handheld assistive device for ambulation. Accordingly, based on the record before me I have determined that the claimant is less limited and can stand/walk for 6 hours out of an 8 hour day.

(AT 24-25, citations omitted.)

Based on the ALJ's interpretations of Dr. Freund's opinions and PAMF's, she formulated an RFC allowing for light-work with some restrictions, specifically noting plaintiff's ability to lift and carry 20 lbs. occasionally/10 lbs. frequently; sit, stand, and walk for 6 hours; and occasionally perform other physical acts. (AT 20.)

Despite agreement with the Commissioner on some issues, the undersigned agrees with plaintiff on her most-salient point: the ALJ's resolution of these opinions demonstrates an attempt to cherry-pick facts. See 42 U.S.C. § 423(d)(5)(B) (requiring an ALJ base the decision on "all the evidence available in the [record]."); Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014) (the court may not affirm where the ALJ "pick[ed] out a few isolated instances of improvement" to support the denial of benefits).

As of this order, no circuit court has weighed in on whether ALJ's are now allowed to cherry-pick the record in making a supportability or consistency finding, or what kinds of findings explicitly constitute cherry-picking under the new regulations. Recently, however, numerous district courts across the country have remanded where evidence supporting or consistent with a rejected medical opinion was ignored. See, e.g., White v Comm'r, 2021 WL 858662, *20-21 (N.D. Ohio Mar. 8, 2021) (finding the ALJ failed to explain why a physician's limiting opinion was not persuasive in the face of evidence that supported and was consistent with

the opinion; relying on prior circuit precedent that "[i]f relevant evidence is not mentioned, the court cannot determine if it was discounted or merely overlooked"); Kaehr v. Saul, 2021 WL 321450, *2-4 (N.D. Ind. Feb. 1, 2021) (finding the ALJ "cherry-picked evidence, and thus didn't provide substantial evidence to support his conclusion," where the decision did not discuss the supportability of a physician's limiting opinion and did not consider the totality of the record in evaluating the opinion's consistency; citing prior circuit precedent applicable to the new regulations); Vellone v Saul, 2021 WL 319354, *9-10 (S.D.N.Y. Jan. 29, 2021) (finding the ALJ's RFC determination "not supported by substantial evidence" where the ALJ "cherry-picked treatment notes that supported his RFC determination [at times indicating normal gait and spine] while ignoring equally, if not more significant evidence [indicated abnormal gait and worsening lower back pain] in those same records"; relying on cases prohibiting cherry-picking); Etherington v. Saul, 2021 WL 414556, *4-5 (N.D. Ind. Jan. 21, 2021) (finding "a good deal in the record that cuts against [the ALJ's supportability and consistency] determination," and noting "this evidence received no such attention"; relying on prior circuit precedent prohibiting cherry-picking); Audrey P. v. Saul, 2021 WL 76751, *9-10 (D.R.I. Jan. 8, 2021) (remanding for further consideration where "dramatic example[s]" of cherry-picking led the ALJ to ignore a source's "overarching conclusion that Plaintiff suffered from significant and unresolved '[f]unctional difficulty includ[ing] standing, sitting, bending over and walking all 2/2 pain'"); Pearce v. Saul, 2020 WL 7585915, *4-6 (D.S.C. Dec. 22, 2020) (noting the plethora of medical records supporting and consistent with a physician's limiting opinion when determining the ALJ cherry-picked the evidence to discount this opinion, and holding that "[a]lthough the ALJ appears to have considered the appropriate factors, [she] failed to explain how the evidence supports her conclusion and meaningful review is frustrated"; relying on recent circuit precedent under the old regulations stating that "specious inconsistencies cannot reasonably support a rejection of medical opinions or other evidence"); see also, e.g., Branham v. Comm'r, 2021 WL 1589378, at *6 (N.D. Ind. Apr. 23, 2021); Tumlin v. Comm'r, 2021 WL 1214880, at *10 (M.D. Fla. Mar. 31, 2021); Drake v. Comm'r, 2021 WL 1214689, at *4 (N.D. Ohio Mar. 31, 2021).

///

9

In comparison to these cases, other district courts have found it entirely appropriate for an ALJ to articulate a cursory rationale on the supportability and consistency factors where there was <u>no</u> evidence in the record to support a medical opinion. See, e.g., Olson v. Saul, 2021 WL 1783136, at *2 (W.D. Wis. May 5, 2021) (recognizing that the the ALJ "may not ignore evidence that undermines her conclusions," but finding that plaintiff "doesn't point to any such evidence."); Paula J.S., v. Comm'r, 2021 WL 1019939, at *4 (W.D. Wash. Mar. 17, 2021) ("Plaintiff claims the ALJ cherry-picked the record[, but] does not point the Court to any examples of alleged omissions."); Jones v. Berryhill, 392 F. Supp. 3d 831, 339 (M.D. Tenn. 2019) (affirming ALJ's finding that physician's opinion was unpersuasive because it was "not supportable or consistent with the record," where there was no evidence in the entire case record supporting the physician's opinion).

The undersigned finds the reasoning of the above cases highly persuasive and relevant to plaintiff's case. First, there are significant differences between (a) the ALJ's account of the opinions expressed by Drs. Hyuhn and Ruo in the prior administrative findings and (b) what those PAMF's actually expressed. The ALJ stated these two physicians determined plaintiff could "stand/walk for 6 hours out of an 8 hour workday." However, Dr. Hyunh found plaintiff could stand/walk for 4 hours per day, had push/pull limitations in her lower extremities (which the ALJ did not discuss), and was ultimately limited to sedentary work. (AT 66-69.) Dr. Ruo expressed similar findings, except that plaintiff would be limited to "less than sedentary." (AT 77-82.) Thus, the record is not completely as the ALJ represents, which requires correction. See, e.g., Orn v. Astrue, 495 F.3d 625, 634 (9th Cir. 2007) (finding ALJ's assessment of a physician's to fail the substantial evidence test where "the record shows the opposite" of what the ALJ described).

Second, and more importantly, there <u>is</u> ample "objective medical evidence" (20 C.F.R. § 404.1502(f)) in the record, from multiple of plaintiff's "medical sources" (§ 404.1502(d)), that stretches across a lengthy treatment period and appears to support the more limiting aspects of the three physicians' opinions (Drs. Huynh, Ruo, and Freund)—evidence the ALJ (at best) failed to connect to her persuasiveness findings or (at worst) willfully ignored. The ALJ discounted Dr.

10

Freund's opinion because it contained no diagnosis of meniscal tears, plaintiff's gait was not abnormal "for much of the relevant period," and records showed full strength in plaintiff's upper leg. (AT 25.) However, the record clearly shows the presence of meniscal tears. (See, e.g., AT 263-64 (MRI of plaintiff's knee), 1139-51, 1157, 1195-96, 1228-29.) Inexplicably, the ALJ herself appears to recognize this, noting multiple records demonstrating the tears in her summary of the medical evidence. (See AT 21-22.) However, there is no connection between this cited evidence and the ALJ's resolution of Dr. Freund's opinion—only a finding that the form doesn't recite what the evidence shows. See, e.g., Mark M. M., 2020 WL 2079288 (finding the ALJ failed to "link purportedly inconsistent evidence with the discounted medical opinion," relying on Magallanes, 881 F.2d 747 for the proposition that an ALJ must provide a detailed and thorough summary of conflicting evidence, and an interpretation and findings thereon); see also Roberts v. Comm'r, 644 F.3d 931, 934 (9th Cir. 2011) (noting that "social security hearings are not meant to be adversarial in nature[.]"). As to the ALJ's consideration of plaintiff's gait and leg strength, she references her earlier summary of the medical evidence, where she appears to focus on records showing normal findings from earlier in plaintiff's treatment period (in 2016 and early 2017). (See AT 21.) Nevertheless, the ALJ simply fails to discuss other records, from late 2017 through 2018, showing an antalgic gait and reduced strength in the hip and knees. (See, e.g., AT 493, 796, 809, 814, 834.) Finally, the ALJ discounted the PAMF's for the sole reason that she believed they were "based in part on a finding that [plaintiff] requires a handheld assistive device for ambulation." Again, this is not wholly accurate. Orn v. Astrue, 495 F.3d at 634. Instead, both PAMF's stated a "cane may be beneficial with prolong[ed] ambulation and standing." (See AT 67 and 80.)

Thus, it appears the ALJ is attempting to construct an RFC based on an earlier version of plaintiff, rather than take plaintiff as she is at the time of the decision and consider whether her conditions were worsening. See Young v. Heckler, 803 F.2d 963, 968 (9th Cir. 1986) (noting that where the record shows deterioration, the more recent reports may be more probative). In this way, the ALJ's assessment of the record fails to take account of significant medical evidence. See 42 U.S.C. § 423(d)(5)(B); Holohan v. Massanari, 246 F.3d 1195, 1205 (9th Cir. 2001) (a

physician's statements "must be read in context of the overall diagnostic picture," and an ALJ's "selective . . . reliance" on the record does not meet the substantial-evidence standard); see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989) (a court may not affirm by isolating a "specific quantum of supporting evidence").

The court is aware of the general proposition that ALJ's are to resolve ambiguities and conflicts in the record. Ford, 950 F.3d at 1154. The court is also cognizant of the deference sought by the agency in promulgating these new regulations. See 82 Fed. Reg. 5844-01 at *5860 ("[The new regulations are] essential for [the agency's] administration of a massive and complex nationwide disability program where the need for efficiency is self-evident."). However, the text of the regulations explicitly require an explanation of how the ALJ considered the supportability and consistency of an opinion. 20 C.F.R. § 404.1520c(b)(2). Synthesizing this requirement with prior circuit law prohibiting cherry-picking, the ALJ must explicitly address evidence that supports and is consistent with a less-than-persuasive medical opinion or PAMF, and should this evidence fail to persuade, the ALJ must provide legally-sufficient reasons why.[5] See Jones v. Saul, 2021 WL 620475 *8 (the ALJ cannot "forego articulation of their reason or reasons altogether"); see also Lambert, 980 F.3d at 1277 ("[T]he ALJ must provide sufficient reasoning that allows [for] review."). Simply, there is no room for ignoring significant portions of the record, despite the seeming malleability of the agency's new standards.

---

[5] For example, the court notes that Ninth Circuit case law from the pre-2017 hierarchy would support the ALJ's unpersuasive finding if the opinion conflicted with a plaintiff's hearing testimony. See also, e.g., Quesada v. Colvin, 525 F. App'x 627, 629–30 (9th Cir. 2013) (finding the ALJ's rejection of a physician's opinion supported by substantial evidence where it was inconsistent with plaintiff's own testimony).

Similar rejections have been found legally sufficient where the opinion lacked detail—but only where there were also no medical records supporting the opinion. See, e.g., Magallanes, 881 F.2d at 751 (ALJ need not accept an opinion which is "brief and conclusory in form with little in the way of clinical findings to support [its] conclusion.").

Further, courts have forgiven an ALJ's error as harmless where an error affected the RFC formulation, but where the VE opined that a plaintiff would be able to find significant work in the national economy even under a more-restrictive RFC. See Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008) ("the court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination").

As to the ultimate outcome of plaintiff's claim, the undersigned expresses no opinion on the level of persuasiveness that should be ascribed to Dr. Freund's opinion or to the PAMF's. Nor does the undersigned express what plaintiff's RFC should ultimately be. These are for the ALJ to decide. <u>Ford</u>, 950 F.3d at 1154 (the ALJ is responsible for resolving conflicts and ambiguities in the record). However, because the ALJ cherry-picked facts when resolving the opinions of Drs. Freund, Hyunh, and Ruo, the proper remedy is remand, where the ALJ may either (a) reaffirm her decision after a more thorough explanation of why these opinions were unsupported by and inconsistent with the relevant evidence, or (b) award benefits.

## **ORDER**

Accordingly, IT IS HEREBY ORDERED that:

1. The Commissioner's motion for summary judgment (ECF No. 24) is DENIED;
2. Plaintiff's motion for summary judgment (ECF No. 12) is GRANTED;
3. The final decision of the Commissioner is REVERSED AND REMANDED for further proceedings; and
4. The Clerk of Court shall issue judgment in plaintiff's favor and CLOSE this case.

Dated: May 17, 2021

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

buet.552

13